The issue in this case is the viability of the so-called silent witness doctrine. And under the silent witness doctrine, a reclaimed can be admitted as primary substantive evidence based on a foundation that establishes the recording's authenticity when there is no witness available to testify. In order to be admissible under the silent witness theory, it must be established the camera in the system were able to record and were generally working properly. The second thing is there has been an adequate chain of custody. And third, that a video recording was not the result of tampering or fabrication. In this case, what is significant here is there was a stipulation by the parties which met the requirements in this case for the silent witness doctrine. The parties stipulated the case agent was trained and experienced in the use of covert audio and video recording. The parties stipulated the case agent placed the surveillance camera on the confidential source just prior to the controlled buys that took place here. The parties stipulated that if called to testify, the case agent would testify the audio and video were working properly. And the parties stipulated that immediately following the controlled buys, the case agent removed the recording device from the confidential source and placed the device into a computer to determine whether the audio and video recorded properly. The parties further stipulated that law enforcement took the confidential source to the fields apartments in Carbondale where the source entered into the apartment for the controlled buys. Officers watched the confidential source go into the apartment and following the controlled buys that took place in this case, he returned directly to the officers. The case agent removed the device, maintained possession of it throughout the entire case. So the stipulation of the parties established an adequate chain of custody was maintained by the state. The state has established here the probability that there was no tampering with the video recording. The defendant in this case did not produce any evidence of actual tampering. He did not point to any gaps in the recording or anything else to suggest the video had been altered or fabricated. Ms. Stacey? Yes, Your Honor. There was a case recently by the Illinois Supreme Court. I want to say it's Peoples v. Thompson, which dealt with the silent witness rule. And my question to you is really, was it the intent of the state to just play the video and let the jury determine for itself what was going to happen, what was going on? Would nobody have testified to what was going on in that case? Or did we not just get that far? We did not. I mean, that was my concern in this case. We did not get that far because this was an official motion in liberty. Right. So under Peoples v. I think it's Peoples v. Thompson, which created the new rule for the silent, for the video introduction of testimony where if you have a lay witness, it's got to be this. But are you familiar with this case? I am not familiar with that case, Your Honor. We ought to look it up. But so we didn't get this far with regard to what the video was going to be used for. This still, as I understand this issue right now before us, is it's very limited to the introduction of a video. The admissibility. I completely agree. Right. Not what it's going to be used for. Well, once it's determined that it's admissible and all of those things I just stated to the court time to say, hey, these are the things we can agree on.  basically is no silent witness doctrine. And I believe that the state would have to do that. And I believe what the state would do, the reason we have a stipulation at this point of the case, is essentially my belief in why there was a stipulation is to save the court time, to say, hey, these are the things we can agree on. But the point is, all of those things go against the defendant's argument that there basically is no silent witness doctrine, that you have to bring in the confidential source to testify. But I think in this case, should it be remanded, as the state will suggest to you that it should be, there will be testimony from those officers, from Officer Bingle, about what... But this is another case I got reversed on. Was the Thompson case your case, ma'am? Yes, and that's why I know. I mean, that's why I'm asking you this very narrow question, because in Thompson, and again, perhaps I'm raising another case that was not addressed, I know. But the issue was there was a man at the door, and all you could see was the hoodie from the back. And I apologize for taking your time. Maybe you'll give her a few extra minutes. And that was the question, is a police officer wanted to testify. And the Supreme Court has now decided that if you want a police officer to testify, you actually have to have a hearing of some kind. Is that based on an identity issue? Yes, but it surrounds this video, and that's why I'm asking you. Because we're going to have to identify... We don't know what that video was going to say, really, at this point. I can't see where you're headed on this one, Your Honor. Right. It's very narrow right now. It is very narrow. And we have to be very careful what we say, because my concern is, if we agree with you and we reverse, I'm not sure that we can say that it's admissible for all purposes. The only thing we can say is you don't have to produce a confidential source to admit a video. I think you're absolutely right. I think you're absolutely right that I can't, at this point, at this stage of the case, be able to say how far this can go. My argument is essentially the admissibility. Here, the trial court said it's not admissible if you do not bring in a confidential source. And that's it. Which essentially cuts out the entire silent witness doctrine that the internal Supreme Court established in Taylor is a viable doctrine and it remains a viable doctrine. Right. And Thompson may not have had so much of the silent witness doctrine in it, although I think it did. But that's not really of importance here right now. I see where you're going on that. Right. And I want to make sure that whatever we do, we are very narrow. I would agree with that 100 percent. Okay. This is an evidentiary ruling, and isn't an evidentiary ruling an abuse of discretion standard, whereas you have argued for a de novo review standard. So explain why your point of view is better. Why my point of view, that a de novo standard is better? Why we must review de novo and why, as an evidentiary ruling, we wouldn't give it the ordinary abuse of discretion standard. I think you're right. The abuse of discretion standard would be the appropriate standard. But here we have an erroneous rule of law, and that is that there essentially is no silent witness theory that can be presented, that the state has to bring in the witness, the confidential source, who was wearing the wire that day. So it's based on an erroneous legal ruling, and this court can look at that with fresh eyes under the de novo review and say the court applied the wrong legal standard, that if all of those foundational requirements are met. Because the issue really is not what's on that video, it's the accuracy of the recording process. And the stipulation in this case took care of all of those issues. So that is why the silent witness theory does apply. I agree with Justice Cates completely that this is the main argument that I have here is the invisibility issue. The weight given to that, that is all for a whole other day in court. Have you cited a case to us where the silent witness doctrine was applied to a confidential source? I have not. And I will admit that when I went through cases and tried to determine those, the best source that I found was the Taylor case. And in Taylor, it was more of a, where the court said the typical situation where this would apply would be on a fixed camera located in a position, let's say in a convenience store or a bank, where maybe it's motion activated. And it's only video too. That's probably very accurate. There's a recent 5th District case on this. I haven't seen the news. Well, maybe a Rule 23 that you couldn't have cited because it's an East St. Louis case where there's a camera and it involves a shooting. And there's the question of, you know, did the restaurant owners put in the video, et cetera, et cetera, et cetera. Only a Rule 23, unfortunately. Okay. So you're going to give us a little extra time. With regard to the audio or the video, the video was presented as a demonstrative evidence, and it is what it is. Well, it speaks for itself. But when it comes, and because it doesn't, because there is no speaking, perhaps the silent witness, with regard to the audio, however, isn't it inherent that when there's someone who's using any kind of speech to impart, you know, a message to the court that the accused has allowed the opportunity to cross-examine that person? And with the video, you can't do that, especially if that person who made that video can't attest to the accuracy of what is being said in that audio. I see where you're going with it, and that is, if I'm allowed to have a little more time to answer, that the issue is whether that's a testimonial statement. Right. The way that I understand that this type of issue falls down is it's a statement against interest under Rule 801, Rule of Evidence 801. What's a statement against interest? What we see on the video, which we do not have the video, but presumably what we have is the defendant selling drugs, heroin, cocaine, whatever. But is it really relevant at this stage, what's on that video? Well, it's relevant to whether or not it's a testimonial or is it a statement against interest, and is it deemed not a testimonial? Well, if it's audio, I mean, it can be manipulated. Regardless if there's any testimony from the defendant suggesting that it had been altered in any way, it's much easier, my understanding is it's much easier to alter that than a video. And that's why on the recording process, that's why the State has this burden up front to meet all of those qualifications. The chain of custody, isn't the chain of custody in this particular instance broken by the fact that the person who during that buy had the video and is not here to testify as to if he handed it off to somebody, if they had a script that they had made up and were ready to read for the audio portion of it? How is that, how do we have a complete chain of custody when we have someone who was in sole control of that video and audio not present? And the State addressed that particular issue in the brief, that any potential gaps, which the State does not agree that we have gaps in the chain of custody, but any potential gaps affects the weight of the evidence, not the admissibility. But how can the State not agree that there's a break in the chain of custody if no officer had the tape or the audio during the period of the buy and the alleged person who did have sole control over it is nowhere to be found? But the issue, I think, Your Honor, with all due respect, is was there really an opportunity for tampering of that evidence? And the reason is, let's say the confidential source has the surveillance camera hidden wherever they hide it. If he had done something to tamper with it, it would have been obvious to the defendant who would have said, you must be wearing a wire or what is it you're doing? There would have to be some action on his part to actually tamper with that. Well, it would be nice if the confidential one-up was here to testify. It would be. And I believe they did try to find him in Texas. I have a feeling, I don't know, I have my own beliefs on what might happen to the guy, but there would have been evidence on that video that there were gaps, that there were skips, that certain parts of the speech didn't match together. But really all we are looking at at this point is the admissibility, not the weight. The State believes we've met all of those requirements and that the defense is precluded from arguing against that now because it entered into the stipulation. Isn't there also a right to confront the witnesses? And I believe that's what Justice Barberos was getting at, on whether or not this is a testimonial-type issue, and the cases say that it is not. But the cases all refer to cases, as you pointed out, are stationary video cameras only. Yes. They're not audio. Yes. They're not being worn by an individual. Correct. And I'm assuming that you would have cited a case, had there been one, where someone wore the camera on them. I did not find a case with regard to a confidential source, but we know Taylor mentions that because it mentions the prototypical, where the typical situation is where you've got a fixed camera, someone comes in, it's motion-activated, and then you see what happens on there. Right. I believe there were a couple of those cases where there was actual audio with it, but Taylor did not focus on is it a fixed camera or does somebody have control over it. It focused on the accuracy of the recording process. And then it's up to the parties to argue what the weight of that video evidence would be down the road. But I agree with you. The internal defense attorney in me has a little bit of a gut check on, is there a testimonial issue here, but it appears as though the case law does not come down that way, that they don't look at it as a testimonial-type statement, that the video actually speaks for itself, and it's under 8.01, 8.01.2, I believe, in which he gives the interest. And it says that the video is the issue in question, and it's demonstrative evidence, as you point out, not testimonial. Correct. So I don't know that you've cross-examined a demonstrative evidence. That's correct. That's correct. All right. Thank you very much. Thank you for your time. Additional time, even. Thank you. And we're live. Hello. I'm Assistant Defender Hemi Harris for the appellee, John Petit. I want to briefly address some of Your Honor's questions while that's fresh in our minds and then get to my argument if I could. Of course the statements that are on this video are testimonial. This guy went in wearing a wire for the cops. He knew what he was going in to do. He was going in to get evidence because he got a deal. He got paid $1,500 or something to go in and get this evidence to prosecute. So we've got statements by him. We've got, if you look at the affidavit for the search warrant, you've got my client talking to somebody else on the telephone, and that's on speakerphone. So you've got somebody on the other end of the phone coming in. You've got my client talking to somebody else. Again, statements by my client are not the issue. Ms. Kelly's argument that, oh, it's a statement against interest, that applies to my client. That doesn't apply to what anybody else was saying or what else was, that doesn't even get to what was going on with the video. I think that counsel misstates repeatedly our argument. Our argument is not for the silent witness rule to apply. You have to bring in the confidential source. That's not correct. If you want to, if you bring in the confidential source, that's not the silent witness theory. That's just the classic theory. You bring in somebody and authenticate it. Here, the trial court wouldn't say that the only problem was, well, this confidential source is not here. The court focused specifically on the fact that this guy was out of the vision and hearing of these police officers four times, as you pointed out, Justice Barberis, and that there was no contemporary in his way for the police to say, okay, I'm listening live. Yeah, that comports with what I heard. Yeah, that's exactly what we saw on the live video feed. That's what the trial court focused on. If we had that here, it would be a different story. So you're saying that a police officer seeing the video recording or even a camera recording can never be out of the sight or vision of a police officer to be admissible under any circumstance? No, Your Honor. Respectfully, that misstates our point. Well, haven't we ever did it in if there's no – let's take a video, for example, instead of an audio, because I understand your theory about hearing. There are live video feeds as well. So we have to always use a live video feed in order to have an admissible piece of evidence. Well, it is a confidential source. I would say so. If you have a piece of evidence that goes – or something in the chain of custody is broken where you have a guy that goes out of the sight, out of the hearing of officers who can testify with their personal knowledge about what was going on during that time. Well, under the federal cases, before we had this kind of technology, right, before we had where officers could listen in their earbuds or whatever, we had people going in for wired – to encourage the defendant to take testimony. And those wire recordings were admitted based on chain of custody through police officers, correct? Are you familiar with those cases? They certainly weren't cited by the state if they were. And I don't believe, Your Honor, I think that's part of our whole contention, is that there aren't such cases where that came in under the silent witness theory. No, no, you said – no, you said you're not arguing the silent witness theory. No, I said I'm not arguing that the silent witness theory doesn't exist. Of course I'm implying that the silent witness theory does not apply here. Counsel said – No, your argument – if I understand, sir, your argument is that it's a chain of custody issue, that there's no authentication. No, Your Honor, I'm arguing that for the factors, and maybe we can get to that. That's part of my argument. Okay, go ahead. There are six factors under Taylor, and their list is not exclusive. The state keeps trying to condense them down into three because it's easier for them to talk about three. There are six factors under Taylor. You have to talk about the device's capability for recording and its general reliability, competency of the operator, proper operation of the device, showing the manner in which the recording was preserved, which is chain of custody, identification of the person's locale or objects depicted, and explanation of any duplication process. In this case, even taking everything in the stipulation as true, which was not what counsel stipulated to. We've argued about that in our briefs as well. Counsel stipulated this would be his testimony. I'm not stipulating that what he would testify to is correct. Even assuming it is, from that stipulation, you don't know anything about the competency of the operator, who, as Justice Barbera has pointed out, was the confidential source. He was the one in sole control of that recording device. We don't know anything about whether the device was operating properly inside the apartment, and we don't know what happened with chain of custody while this was out of the confidential source's sight. So I guess to get to your point, chain of custody is part of the consideration, but not the entire consideration of whether the silent witness theory applies. Counsel said in her argument and in Bruce, well, this is admissibility. Once we get this in, we can talk about the weight of the evidence at trial. I don't know how you cross-examine a videotape. I don't know how you cross-examine somebody about what went on inside that building. This is why I was trying to get to this very narrow issue. Once the thing comes in, then the question becomes whether they call the confidential sources a witness and whether the substance of that tape can come in. In other words, just because it's admissible doesn't make it relevant. It doesn't make it that there may be insufficient foundation, or maybe I'm confusing the two here. Maybe I'm confusing the two. So you're saying that once it's in, it's in for all purposes. I think it could be limited, but I think what the state is arguing is, look, let's not think about all this now about where's the confidential source or chain of custody or whether he was operating it properly. Let's just get it in, and all those issues can go to the weight of the evidence. But who's going to testify as to whether the operator knew what he was doing? That was my point. I mean, I think they'd have to call somebody and say this is what went down, and what do you think? And I think that that's what the court's order was getting at, that unless you produce somebody who can testify about this, it can't come in. Now, whether you're talking about silent witness theory or whether you're talking about, look, we need somebody in the chair for the defense to cross-examine for his Sixth Amendment rights, whatever the point is, without that CS, you can't bring this evidence in. I don't know. What about Justice Moore's question about the difference in the standard of review that's been raised here? Well, Your Honor, obviously we disagree with the state, but that's no great surprise. This kind of case is always an abuse of discretion. Even where there are legal issues involved, the controlling precedent on this is People v. Taylor. Our Supreme Court said, look, these kinds of things, if they're mixed questions of fact and law, they still are entrusted to the discretion of the trial court. So what happened in Taylor, the Second District had reversed the trial court by going and re-weighing the factors and saying, well, I don't think the court did it right. The Supreme Court reinstated what the court had found in the trial court and said, look, abuse of discretion says we trust that what this court did was not arbitrary or fanciful. In this business of, well, he was making this decision based on an erroneous rule of law, the erroneous rule of law that counsel says is, well, that there is no silent witness theory. Again, that's just not the case. So, I mean, your Honor, under any theory, we would win under de novo. We believe that and we've argued that. But I think the easiest thing, Justice Kitchin talked about trying to make a narrow ruling, one that doesn't splash around and make new law. The easiest thing to do is say, look, the trial court heard the evidence, the trial court wasn't out of his mind when he made this decision, and we're going to affirm it and let the state try its case. I mean, it's not a question of if we affirm this, then my client is off the hook and the state has no options. There are plenty of options for the state, which we've talked about in our briefs. Very briefly, what's a green light mean? Three minutes? Two minutes? Okay. Very briefly, the Confrontation Clause. It was not the grounds for the court's holding, but as you know, you can affirm on any basis supported by the record. I just don't think that there's any way to cross-examine any of the people that are on the tape if those people don't come in. And again, unless you're bringing in, and we don't concede that this would be okay either, but if you bring in the video and delete the audio altogether, any of those statements that are made by anybody besides my client would be statements that could be used against my client in violation of his Sixth Amendment rights. With regard to talking about bringing people in that were shown on the video and audio, I'm assuming that we're talking about eliciting some sort of testimony with regard to tampering with the video or the audio. Is that correct? Not necessarily, Your Honor, but we don't. Go ahead and finish, Ryan. Maybe a little extra time. Okay. We don't rule that out. And to that point, the State says a lot of times, well, look, there's been no allegation by the defense that any nefarious thing happened while this was out of sight. Well, of course not. We haven't been able to talk to the guy who was in sole control of the machine. So you can't hide the ball and then fault the defense for not dribbling the ball. The confidential source would be the one who would have the evidence about what happened with that tape or not. Whose burden is it on a motion to eliminate? It's our burden on the motion to eliminate, and it's the State's burden as a proponent of the evidence to lay a foundation for its evidence. So all you have to do is say I don't want it in because you can't show a chain of custody? No, Your Honor. What was your burden in the trial court? Well, I would say a preponderance of the evidence. But of what evidence? Of the evidence that these six factors we talked about, that the State did not satisfy those. Yeah, and I think that the stipulation didn't address those. That's the other question that was raised. Why isn't there wavering here? I mean, what is the purpose of the stipulation except to get rid of this whole issue before the trial court? Well, respectfully, it wasn't to get rid of the whole issue for the trial court. The stipulation was part of the hearing on this issue. So, of course, counsel did not get up there and stipulate everything. I'm going to stipulate the foundation, Your Honor. Now we're going to ask you to rule there's no proper foundation for this evidence. That's not what was going on. There are some of the factors that are addressed and can't be addressed by the police officer. There are others that cannot. He has no personal knowledge about what that, what that, it's actually a woman, a confidential source. I believe her name was Deborah. Of what she was doing in there, of what her experience was about how she ran this, whether she moved it, whether she adjusted it, anything like that. Yeah, so the police officer's testimony was the only thing it was stipulated to. And whether it's stipulating or whether it's coming in and lying testimony, he can't testify to stuff outside his personal knowledge. I mean, we don't have a system where we say, well, he got him up to the door and we all know what happened in there, so we don't need these other three factors. We don't, we can't do that. That's not the way that it works. Your Honor, I'm done if you don't have any other questions. We just ask you to affirm the trial court. Thank you. Counselor? Let me ask you a real quick question. We have somewhat of a, well not somewhat, we have an insufficient record in that we don't have audio or video provided to us. Why don't we have that? We do not have that. Neither party submitted that as part of the record on appeal. And I believe that in this case what makes the case different and why you do not need that is because of the stipulation. I think without that stipulation, this court would need to see what was on that video. But the whole issue under Taylor is the accuracy of the recording process. Virtually every one of those factors, the capability of the recording device, that was stipulated to. The competency of the operator, that was stipulated to. The confidential source was not operating anything, just wearing it. The officer set all of that up. If I may quote Taylor, it says, under the silent witness theory, photographic or videotape evidence may be admitted without an eyewitness to establish the accuracy of the images depicted in it if there is sufficient proof of the reliability of the process that produced the photograph or videotape. But there was no one wearing the video. Correct. There was no live person involved with the actual video. That's correct. It was the principal's office that set up the camera. But Taylor did not limit it to only when there's a fixed camera. And that is the issue. But did it expound upon it? It said that the situation is where it's a fixed camera, a fixed location. But it didn't limit that type of surveillance video. And probably because it helps keep up with the times better. Just like on a photograph, you do not have to bring in the person that actually took that photograph. You just have to have somebody be able to testify that it accurately depicts what it purports to depict. And if you have a person wearing the device, aren't they the one who can? If there's no one else doing a live feed, aren't they the only one who can testify that this depicts what actually is on the video? But requiring that person to come in and testify negates the entire silent witness theory. It's because it only applies when you do not have a witness, an eyewitness, to testify about it. But if using your example, if a camera, if I take a picture of this courtroom, and then I skip town, and Justice Gates wants to present that as evidence, she can testify that this is an act. I've seen this building. I've seen the people that were there that day. And this is an accurate portrait and depiction of what the room looked like. However, if I'm wearing the camera, and I'm the only one in the room, they're not here. And I take the picture or the audio, whichever. And then she then comes in and wants to testify, wants to bring it in and say that this is an accurate depiction. She can't because she wasn't here. I'm the only one that can give that testimony. Well, in this case, we have the officer who set all of this up. But he can't depict, he cannot say what took place when he wasn't involved with the camera. I do not believe you need him to, Your Honor, with all due respect. I do not believe we need him to because we have a stipulation. We have a stipulation that this... Outside the stipulation. Apart from the stipulation, I would agree with you, the state would have significant problems on this case. So the only issue that really matters is whether the stipulation is good or not. I believe the stipulation is good. And I would also like to add, Your Honor, that when Justice Gates is asking me about the burden of proof on this case, the state decided once the state has established the probability that the evidence was not compromised, and unless the defendant shows actual evidence of tampering or substitution, any deficiencies in the chain of custody go to weight, not admissibility. That's page 25 of our opening brief. It's also cited in our reply brief. And that's the difference, right? And the case is? I'm sorry, Your Honor. The case law that you're reading? The case is People v. Woods. It's an Illinois Supreme Court case, 2005. I can give you the cite if you'd like that. No, it's in your brief. And it's quoting a couple of appellate court cases. I'd love to look that Thompson case up if the court would give me the opportunity to do that. I'm not sure it's applicable under this circumstance. But going to what Justice Barberos was getting to, there were actually two people to the conversation. There was the confidential source and there was the defendant. And once the defendant raises this issue, does the defendant, because he carries the burden of proof, become subject to being called by the state? I would have to say the state would not be able to call him as a witness because it's a criminal case. In a motion to suppress evidence, we see the defendant getting on the stand. It's a slippery slope for the defendant. Normally when the defendant testifies, it's because his own attorney has called him. I don't believe the state would be able to call the defendant adverse on a case that involves a criminal. So then Justice Barberos is correct that the only person who could testify because you can't compel the defendant to testify. That's correct. Is the CS. Is the CS, who we do not know where. I didn't realize it was a female. I didn't see that anywhere in the record. But the CS is unavailable, and that's where the silent witness theory comes in. If you establish the accuracy of the recording process, the way the case law. Continues. The way the case law comes down is that the thing speaks for itself. You can argue the same thing with a video where somebody goes in and knocks off a liquor store and there's no sound. Well, how do I cross examine that as a defense attorney? I'm sorry, it's a product of industrial age. We can't determine the thing if the recording speaks for itself because we don't have that in the record. We do not have that in the record. And further, is it not possible? Okay, so the state doesn't call the person wearing the wire a confidential source. Is it possible for the defense to call them? Certainly. If the defense could find it, I'd rather have the confidential source available in this case. But the state tried to locate the person. My understanding is we know where they're at. They're in Texas, but we just don't know. That's what I had heard. They were in Texas. That's a big state. I'm not sure if we know exactly where in Texas they are. I think the state. We just can't compel them to come back. I believe that's accurate. And the state did issue a subpoena and got no response from that. I appreciate the court giving you a little more time. It's an interesting issue, and we hope you will regross and remand. Thank you very much. The court will take the matter under consideration and issue a ruling in due course.